72 F.3d 920
 315 U.S.App.D.C. 281
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
MCCARTHY & BURKE, P.C., et al., Appellees,
v.
NATIONAL CLEANING CONTRACTORS, INC., Appellant.
 Nos. 95-7007, 95-7008.
 United States Court of Appeals, District of Columbia Circuit.
 Dec. 4, 1995.
 
 Before: SILBERMAN, GINSBURG and TATEL, Circuit Judges.
 
 JUDGMENT
 
 1
 This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs and arguments of counsel. The court is satisfied that appropriate disposition of this case does not call for further opinion. See D.C.Cir.Rule 36(b).
 
 
 2
 It is ORDERED and ADJUDGED that the judgments from which these appeals have been taken be AFFIRMED in part and REMANDED for further proceedings consistent with the memorandum attached hereto.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 41(a)(2). This instruction to the Clerk is without prejudice to the right of any party at any time to move for expedited issuance of the mandate for good cause shown.
 
 ATTACHMENT
 MEMORANDUM
 
 4
 We affirm the district court's finding that Shevere Massey, an employee of National Cleaning Contractors, started a fire in the law offices of McCarthy & Burke, P.C. by carelessly discarding a cigarette on September 4, 1991. We affirm also the district court's conclusion that Massey's negligence rendered National liable, under the doctrine of respondeat superior, for the harm she caused. As for damages, we affirm the district court in all but three respects.
 
 
 5
 First, the court had insufficient evidence to justify awarding the value of the 1992 fire account hours in addition to the $200,000 awarded for income lost in 1992. Although the expert witness testified that $773,000 represented a reasonable approximation of lost income for the entire 26-month period running from the date of the fire to the dissolution of the firm, his testimony provides no justification for supplementing the amount by which partner compensation declined from 1991 to 1992 with the value of the 1992 fire account hours. Assuming that other testimony supports an inference that the partners would have earned some amount more in 1992 than in 1991 but for the fire, the record provides no basis for a reasonable approximation of how much more, and, therefore, offers no reasonable basis for using the 1992 fire account hours to compensate for the firm's supposed "uptick" or for the expert's purportedly conservative assumptions.
 
 
 6
 Second, McCarthy & Burke concedes that it received an award of $63,375 based upon the difference between the value of the eighth floor space into which the firm temporarily relocated and the rent charged by McCarthy & Burke's landlord, a loss not covered by insurance. [M & B Br 41; see also JtApp 95, 246-47] As McCarthy & Burke's counsel agreed at oral argument, another way to state this claim is to say that, because of the fire McCarthy & Burke received less value for its rent money.
 
 
 7
 The district court found, however, that McCarthy & Burke occupied the eighth floor offices for nine months after the fire [JtApp 95], indicating that McCarthy & Burke occupied that space for approximately the first half of 1992. The economic injury that McCarthy & Burke incurred as a result of getting less valuable space for its money during 1992 was also reflected, however, in the court's calculation of the firm's lost profits for that year. Again, McCarthy & Burke points to nothing in the record that justifies the double counting. (The district court awarded no damages for any physical or psychic discomfort the partners may have suffered due to working in less desirable quarters, for example.) On remand, therefore, the district court shall determine the last date upon which the firm occupied the eighth floor offices, calculate the portion of the $63,375 sum attributable to the firm's occupancy of the eighth floor in 1992, and subtract that amount from the total award.
 
 
 8
 Although National failed to raise either of the above issues in the district court, questions of the sufficiency of the evidence to support a district court's factual findings may be raised on appeal even though the appellant did not object to the findings in the district court. Fed.R.Civ.Pro. 52(b). By contrast, National may not advance arguments that depend upon subsidiary factual findings that National did not request and that the district court, therefore, did not make. See Miller v. Bittner, 985 F.2d 935, 940 (8th Cir.1993); Reliance Finance Corp. v. Miller, 557 F.2d 674, 681-82 (9th Cir.1977); Evans v. Suntreat Growers & Shippers, Inc., 531 F.2d 568, 570 (Temp.Emer.Ct.App.1976). Therefore, National has waived argument concerning whether the rent increases called for in McCarthy & Burke's lease require an adjustment in the expert witness's damage calculations, and whether McCarthy & Burke could have mitigated its damages by finding more suitable temporary quarters than it did. It has waived also most of its argument concerning double recovery for expenses attributable to the fire, as the merits turn largely upon when those expenses were incurred and upon when and to what extent McCarthy & Burke's insurer compensated the firm for those expenses.
 
 
 9
 For a similar reason, Charles McCarthy's admission that Tom McCabe's move to General Research Corporation cost McCarthy & Burke $360,000 in lost revenues from that client does not help National on appeal. National points to no evidence in the record that can support a finding as to whether and to what extent this loss in revenues affected the law firm's bottom line in 1992 or 1993.
 
 
 10
 Finally, the district court awarded pre-judgment interest to St. Paul under D.C.Code Sec. 15-108, a statute that applies to contract damages only. Duggan v. Keto, 554 A.2d 1126, 1140 (D.C.1989) ("pre-judgment interest in tort actions in the District of Columbia is neither authorized nor forbidden by statute"). "[T]he damages which are normally recoverable in actions for breach of contract are those which arise directly from the breach itself, or could reasonably have been in the contemplation of both parties when they made the contract." Phenix-Georgetown, Inc. v. Chas. H. Tompkins Co., 477 A.2d 215, 225 (D.C.1984). National objects that the district court's written findings of fact and conclusions of law reveal no determination as to whether the losses for which St. Paul compensated McCarthy & Burke could reasonably have been in National's contemplation when it entered the cleaning service agreement to which the law firm was a third-party beneficiary. The court must fill that gap on remand for, to the extent that St. Paul's damages sound only in tort, the availability of pre-judgment interest is uncertain under D.C. law, as discussed below.
 
 
 11
 Of the $370,496.19 that St. Paul paid McCarthy & Burke, $267,117.19 compensated the firm for expenses and property losses incurred as a result of the fire. Generally, these expenses and losses arose directly from the fire or seem well within what a reasonable party to the cleaning service contract would have contemplated. [JtApp 99-101; SuppApp II 1149-1260] On remand, however, a closer look at the individual items of expense and property loss may reveal that some cannot be awarded as contract damages.
 
 
 12
 St. Paul paid the remaining $103,379 to compensate McCarthy & Burke for lost income. The District of Columbia Court of Appeals seems to have approached the foreseeability of lost income with deliberate caution, but has recognized that in certain circumstances lost income can reasonably have been in the contemplation of the parties to a contract for the construction or servicing of a building. For example, in Phenix-Georgetown, Inc., supra, a landlord sued its air conditioning contractor, claiming as damages the landlord's own liability to a tenant--a law firm, as it happens--for lost business income. Id at 226. On a motion to dismiss for failure to state a claim, the contractor argued that such damages were not a reasonably foreseeable consequence of breaching its contract with the landlord. Id. at 225. The D.C.Court of Appeals disagreed, holding that
 
 
 13
 construction contractors who know that a building will be used for particular business purposes should reasonably contemplate that a breach of contract in providing adequate air conditioning will result in loss of business income or profits in the operation of the business, and thus liability may extend therefor.
 
 
 14
 Id. at 226 (emphasis added). See also Sears, Roebuck and Co. v. Goudie, 290 A.2d 826, 832-33 (D.C.1972) (holding air conditioning contractor and subcontractor liable for loss of business income resulting from contract breach when both were on notice that a particular business entity was to be operated for profit on the premises).
 
 
 15
 On remand, the district court should consider evidence in the record regarding whether the parties contemplated or should reasonably have contemplated that National would be liable for consequential damages, including lost income of the building's tenants. Among other evidence, the court should consider in particular whether National was aware that the building's tenants would include a law firm operating for profit. If the court awards lost profits as contract damages, then regardless of whether those damages are liquidated, the court can award pre-judgment interest on that portion of the damages under D.C.Code Sec. 15-109, as it seems inclined to do. See District of Columbia v. Pierce Assoc., Inc., 527 A.2d 306, 311 (D.C.1987).
 
 
 16
 Even if the lost profits and some other items for which St. Paul compensated McCarthy & Burke cannot be awarded under a contract theory, reading Duggan v. Keto, 554 A.2d 1126 (D.C.1989), together with District of Columbia v. Pierce Assoc., Inc., 527 A.2d 306, 311 (D.C.1987), leads us to suspect that the D.C.Court of Appeals would permit pre-judgment interest on the $370,496.19 sum as tort damages. Still, without more certain guidance, we hesitate to reach the issue (or, more likely, to certify it to the D.C.Court of Appeals) unless we must do so. Therefore, we will await the district court's findings of fact and conclusions of law relevant to whether the entire sum is recoverable as contract damages.